The Oasis at Magic Ranch Homeowners Association
an Arizona Non-Profit Corporation,
16625 S Desert Foothills Pkwy
Phoenix, AZ 85048
480-759-4945

FILED USBC HAIL THC
2019 DEC 19 AM10:02

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Erin A Willett<br><br>            Debtor | Case No. 4:19-bk-15365-BMW<br><br>**OBJECTION TO CONFIRMATION<br>OF CHAPTER 13 PLAN** |

The Oasis at Magic Ranch Homeowners Association ("The Association"), secured creditor, by and through its undersigned agent, hereby files it's objection to the Chapter 13 Plan filed on or about December 5, 2019 by the attorney for Debtor.

1. The Association is a secured creditor by virtue of a lien against real property per §A.R.S. 33-1807(A) and Section 7.11 within the Declaration of Covenants, Conditions, Restrictions, And Easements recorded with the Pinal County Recorder's Office as Fee Number 2003-034567 dated 05/27/03 (*Excerpts attached as "Exhibit A"*).

2. The debtor indicates under section "D" on page 6 of the Chapter 13 Plan that no property is to be surrendered through the bankruptcy proceedings so the association's lien will remain intact for as long as debtor retains ownership (*Attached as "Exhibit B"*).

4. The Association has simultaneously filed a Proof of Claim with the Bankruptcy Court for it's secured claim of $740.70 which includes the principal amount owed as of the Debtors' filing date plus related charges as secured by The Association's lien against real property.

5.  The Association requests that the Plan be amended to reflect the full amount listed in it's Proof of Claim.

DATED this _16_ day of _December_, 2019.

_____
Darin Fisher
Managing Agent of Creditor

Original of the foregoing mailed on _16_ day of _December_, 2019 to:

U.S. Bankruptcy Court, Arizona
38 S Scott Avenue
Tucson, AZ 85701-1704

Copy of the foregoing mailed on _16_ day of _December_, 2019 to:

Erin A Willett
6516 E Lush Vista View
Florence, AZ 85132-7905
*Debtor*

Geoffrey M Khotim
My Arizona Lawyers, PLLC
1731 W Baseline Road, Suite 101
Mesa, AZ 85202
*Attorney for Debtor*

Dianne C Kerns
31 N 6th Avenue, #105-152
Tucson, AZ 85701
*Chapter 13 Trustee*

By: Helen Forbush

EXHIBIT "A"

WHEN RECORDED, RETURN TO:

Donald E. Dyekman, Esq.
Mariscal, Weeks, McIntyre & Friedlander, P.A.
2901 North Central Avenue
Suite 200
Phoenix, AZ 85012



OFFICIAL RECORDS OF
PINAL COUNTY RECORDER

LAURA DEAN-LYTLE

DATE: 05/27/03     TIME: 1614
FEE :      67.00
PAGES:    58
FEE NO: 2003-034567

# AMENDED AND RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE OASIS AT MAGIC RANCH

Association to send a bill to a Member shall not relieve any Member of such Member's liability for any Assessment or charge under this Declaration, but the Assessment Lien therefore shall not be foreclosed until the Member has been given not less than thirty (30) days written notice prior to such foreclosure that the Assessment or any installment thereof is or will be due and of the amount owing. Such notice may be given at any time prior to or after delinquency of such payment. The Association shall be under no duty to refund any payments received by it even though the ownership of a Lot changes during an Assessment Period but successor Owners of Lots shall be given credit for prepayments, on a prorated basis, made by prior Owners.

### 7.11 Creation of Assessment Lien; Effect of Nonpayment of Assessments; Remedies of the Association.

Any Assessment, or any installment of an Assessment, not paid within fifteen (15) days after the Assessment, or the installment of the Assessment, first became due shall bear interest from the due date at the rate of interest set from time to time by the Board. In addition, the Board may establish a late fee to be charged to any Owner who has not paid any Assessment, or any installment of an Assessment, within fifteen (15) days after such payment was due.

The Association shall have a lien on each Lot for: (a) all Assessments levied against the Lot; (b) all interest, lien fees, late charges and other fees and charges assessed against the Lot or payable by the Owner of the Lot; (c) all fines levied against the Owner of the Lot; (d) all attorney fees, court costs, title report fees, costs and fees charged by any collection agency either to the Association or to an Owner and any other fees or costs incurred by the Association in attempting to collect Assessments or other amounts due to the Association by the Owner of a Lot whether or not suit is filed by the Association; (e) any amounts payable to the Association pursuant to Section 8.3 or 8.4; and (f) any other amounts payable to the Association pursuant to the Community Documents.

The Recording of this Declaration constitutes record notice and perfection of the Assessment Lien. The Association may, at its option, record a Notice of Lien setting forth the name of the delinquent Owner as shown in the records of the Association, the legal description or street address of the Lot against which the Notice of Lien is recorded and the amount claimed to be past due as of the date of the Recording of the Notice, including interest, lien recording fees and reasonable attorneys' fees. Before recording any Notice of Lien against a Lot, the Association shall make a written demand to the defaulting Owner for payment of the delinquent Assessments, together with interest, late charges and reasonable attorneys' fees, if any, and all other amounts secured by the Assessment Lien. Each default shall constitute a separate basis for a demand, but any number of defaults may be included within the single demand. If the amounts specified in the demand are not paid within ten (10) days after delivery of the demand, the Association may proceed with recording a Notice of Lien against the Lot. If the Association records a Notice of Lien, the Association may charge the Owner of the Lot against which the Notice of Lien is Recorded a lien fee in an amount established from time to time by the Board.

The Assessment Lien shall have priority over all liens or claims except for: (a) liens and encumbrances Recorded before the Recording of this Declaration; (b) liens for real estate taxes and other governmental assessments and charges; and (c) the lien of any First Mortgage or

C:\WINDOWS\TEMP\c.lotus.notes.data\Amended & Restated CC&Rs V4.doc

35

seller's interest in a first contract for sale recorded prior to the Assessment Lien. Any First Mortgagee or any other Person acquiring title or coming into possession of a Lot through foreclosure of the First Mortgage, purchase at a foreclosure sale or trustee sale, or through any equivalent proceedings, such as, but not limited to, the taking of a deed in lieu of foreclosure shall acquire title free and clear of any claims for unpaid assessments and charges against the Lot which became payable prior to the acquisition of such Lot by the First Mortgagee or other Person. Any Assessments and charges against the Lot which accrue prior to such sale or transfer shall remain the obligation of the defaulting Owner of the Lot.

The Association shall not be obligated to release the Assessment Lien until all delinquent Assessments, interest, lien fees, fines, reasonable attorneys' fees, court costs, collection costs and all other sums payable to the Association by the Owner of the Lot have been paid in full.

The Association shall have the right, at its option, to enforce collection of any delinquent Assessments together with interest, lien fees, reasonable attorneys' fees and any other sums due to the Association in any manner allowed by law including, but not limited to, (a) bringing an action at law against the Owner personally obligated to pay the delinquent Assessments and such action may be brought without waiving the Assessment Lien or (b) bringing an action to foreclose the Assessment Lien against the Lot in the manner provided by law for the foreclosure of a realty mortgage. The Association shall have the power to bid in at any foreclosure sale and to purchase, acquire, hold, lease, mortgage and convey any and all Lots purchased at such sale.

### 7.12    Purposes for which Association's Funds May Be Used.

The Association may use the funds and property collected and received by it (including the Assessments, fees, loan proceeds, surplus funds and all funds and property received by it from any other source) for the purpose of: (a) discharging and performing the Association's duties and obligations under the Community Documents or applicable law; (b) exercising the rights and powers granted to the Association by the Community Documents or applicable law; (c) providing or promoting activities and services the Board deems appropriate, necessary or desirable to foster or promote the common good and general welfare of the Project and the Owners, Lessees and Residents; (d) contracting for services (including, without limitation, trash collection or cable television) to be provided to Owners, Lessees and Residents; and (e) taking such other action as the Board deems necessary, appropriate or desirable for the management and administration of the Association or the benefit of the Association or the Project.

### 7.13    Surplus Funds.

The Association shall not be obligated to spend in any year all the Assessments and other sums received by it in such year, and may carry forward as surplus any balances remaining. The Association shall not be obligated to reduce the amount of the Regular Assessment in the succeeding year if a surplus exists from a prior year, and the Association may carry forward from year to year such surplus as the Board in its discretion may determine to be desirable for the greater financial security of the Association and the accomplishment of its purposes.

C:\WINDOWS\TEMP\c.lotus.notes.data\Amended & Restated CC&Rs V4.doc

36

# EXHIBIT B

☐ **Nonstandard Provisions.** See Section (H).

**(D) Surrendered Property.**

■ **None.** *If "None" is checked, the rest of Section (D) is not to be completed.*

Debtor surrenders the following property to the secured creditor. Upon confirmation of this Plan or except as otherwise ordered by the Court, bankruptcy stays are lifted as to the collateral to be surrendered. Any claim filed by such creditor shall receive **no** distribution until the creditor files a claim or an amended proof of claim that reflects any deficiency balance remaining on the claim. Should the creditor fail to file an amended deficiency claim consistent with this provision, the Trustee need not make any distributions to that creditor.

| Entity | Brief Description of Property |
|---|---|
| | |

**(E) Vesting.** Except as stated in this paragraph, property of the estate shall vest in the Debtor upon confirmation of the Plan.

☐ The following property shall vest in the Debtor upon Plan completion:

| Brief Description of Property |
|---|
| |

☐ **Nonstandard Provisions.** See Section (H).

**(F) Tax Returns.** While the case is pending, the Debtor shall provide to the Trustee a copy of any post-petition tax return within 14 days after filing the return with the tax agency. The Debtor has filed all tax returns for all taxable periods during the four-year period ending on the petition date, except:

| Unfiled Tax Returns |
|---|
| |

**(G) Funding Shortfall.** Debtor will cure any funding shortfall before the Plan is deemed completed.

**(H) Nonstandard Provisions.** Any Nonstandard Provision included herein must not be inconsistent with the Code or Local Rules and must identify the provision of the Plan being modified, the proposed modification and the justification for the modification. The Debtor submits the following provisions that vary from Section (C) of the Local Plan Form:

■ **None.** *If "None" is checked, the rest of Section (H) is not to be completed.*
☐ Provide the detail required above.

| Nonstandard Provisions |
|---|
| |

**(I)** **Plan Summary.** If there are discrepancies between the Plan and this Plan Analysis, the provisions of the confirmed Plan control.